UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Western Division



FILED
98 MAR -9 PM 1:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| City of Birmingham, Alabama, and the Greene County Racing Commission,<br>   Plaintiff(s);<br><br>-vs.-<br><br>The American Tobacco Company; Fortune Brands, Inc.; R.J. Reynolds Tobacco Company; RJR Nabisco, Inc.; Batus, Inc.; Brown & Williamson Tobacco Corporation; Philip Morris Companies, Inc.; Philip Morris Incorporated (Philip Morris U.S.A.); Liggett Group, Inc.; Liggett & Myers, Inc.; Brooke Group, Limited; Loews Corporation; Lorillard Tobacco Company; The Council for Tobacco Research-U.S.A., Inc.; The Tobacco Institute, Inc.; Hill & Knowlton, Inc.; and "A-Z entities" (Ala. R. Civ. P. 9(h)),<br>   Defendant(s). | No. CV-97-P-1449-S<br><br>ENTERED<br><br>MAR 0 9 1998 |

## Opinion

Plaintiffs City of Birmingham ("the City") and the Greene County Racing Commission ("Racing Commission") have filed a Second Amended Complaint in response to motions to dismiss brought by defendants. The court considered defendants' motions— based upon both Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Civil Procedure 12(b)(2)-- at oral argument on October 8, 1997. At that hearing, the court directed plaintiffs to file a second amended complaint and provided defendants with an opportunity to file a supplemental brief in support of their joint 12(b)(6) motion. For the reasons stated below, defendants' joint motion to dismiss pursuant to Federal Rule 12(b)(6) is due to be GRANTED. Defendants' individual motions to dismiss

pursuant to Rule 12(b)(2) are due to be denied as MOOT.

## Statement of Facts[1]

On May 28, 1997, the City and the Racing Commission filed this action in the Circuit Court of Greene County, Alabama, against the Defendant companies. Defendants are a variety of holding companies, tobacco product manufacturers, non-profit organizations, and public relations firms, whom Plaintiffs allege to be connected in varying degrees to the American tobacco industry. Until 1992, the City maintained a self-funded and self-administered medical benefits plan for city employees and their dependents. The Racing Commission, a state agency that oversees the operations of Greentrack, Inc., a paramutual gambling operation in Greene County, Alabama, provides a similar self-funded plan for commission employees. The City and the Racing Commission have filed suit on behalf of a class of

> [m]unicipalities, municipal corporations, counties and other local governmental entities who have paid money to third parties for medical care and treatment, or special life care, or disability benefits, or death benefits arising out of illness, disability or death resulting from disease or ailments proximately caused by smoking or other use of tobacco products of a person other than the class member.
>
> Excluded from the class are defendants, any parent, subsidiary, affiliate or controlled person of the defendants, the officers, directors, agents, servants or employees of defendants, and the members of the immediate families of any such person.

Plaintiffs' complaint alleges counts based on restitution/unjust enrichment, indemnity, and common law public nuisance. Defendants timely removed this action to this court on the basis of diversity jurisdiction.

---

1. This recitation of "facts" is based upon the presented materials viewed in the light most favorable to the Plaintiffs.

2



Analysis

As a threshold to suit in federal court, plaintiffs must establish that they have standing to pursue the claims asserted in their 69-page complaint. Because this action is a tort action removed to federal court on diversity, Alabama law will govern the court's determination of plaintiffs' standing to bring this suit.

I. The *City of Birmingham* Cases

Forty years ago last week, the Alabama Supreme Court decided a series of cases concerning a municipality's right to bring a lawsuit against a tortfeasor on behalf of injured employees. *City of Birmingham v. Crow,* 101 So.2d 264 (Ala. 1958); *City of Birmingham v. Walker,* 101 So. 2d 250 (Ala. 1958); *City of Birmingham v. Trammell,* 101 So. 2d 259 (Ala. 1958); *City of Birmingham v. Tate,* 101 So. 2d 263 (Ala. 1958); *City of Birmingham v. Jones,* 101 So. 2d 263 (Ala. 1958). In each of these cases, the City sought to recover amounts that it had paid in salary and medical expenses to City policemen injured by motorist tortfeasors.[2]

The Alabama Supreme Court's most extensive explanation of its holding occurred in *Walker.* In that case, as in the other *Birmingham* cases, the City sought to intervene on the ground that, having paid the police officer's sick-leave salary and medical expenses, the City was subrogated to the officer's right of action against the tortfeasor defendants. In affirming the trial court's denial of the petition to intervene, the Alabama Supreme Court stated that, in the absence of any subrogation rights created by statute, the City had no right of subrogation and no right of action against the alleged third-party tortfeasors. *Walker,* 101 So. 2d at 256-57. The court

---

2. In *Walker, Trammel, Jones* and *Tate* the City sought to intervene in existing suits by the police officers against the tortfeasors, while in *Crow* the City brought a direct claim against the motorist tortfeasor.

3

analogized the City's position to that of an accident insurer, which, unless its contract of insurance so provided, would have no common law right of subrogation. Referring to the City's statutory obligations[3/] as a "contract" with its employees, the Alabama Supreme Court explained:

> In the instant case, the payments made by the City to its policeman, Walker, were payments of an obligation the City owed because of its contract with Walker. Those payments were not made to satisfy any obligation due from the tort-feasor to Walker. *The City's obligation arose from the contract with Walker, not from the tort of the third party.*
>
> . . . .
>
> In the case at bar, the City has no relation to the third party who injured the City's employee other than that of contractor with the injured employee and the city's contract obligation is the medium through which the employee's injury is brought home to the City. The City's obligation to pay its injured policeman is not a contract of indemnity. There is no provision for subrogation of the City in the statutes to which we have been cited.

*Walker,* 101 So. 2d at 256, 258 (emphasis added). In a companion case, the Alabama Supreme Court expanded upon its discussion of subrogation, rejecting the City's suggestion that it was entitled to statutory or "legal" subrogation rights as a "surety" even in the absence of contractual or "conventional" subrogation rights. *Trammell,* 101 So. 2d at 261-62. The *Trammell* court concluded that the City's obligation to pay its employee was a duty owed to the employee regardless of the actions of the tortfeasor:

> The question is whether the city[,] having paid Trammell because the law created an obligation to do so, has a claim against [the tortfeasor] for wrongfully causing Trammell to sustain the damage for which the city has paid him. *The city owed that obligation to Trammell,* although [the tortfeasor] may not have caused the liability or may have been innocent in causing it. The city is not in a true sense a

---

3. In the *Birmingham* cases, unlike the case at bar, the City sought recovery of amounts in sick-leave salary that it had paid to the injured officers pursuant to state law. In addition--and of more relevance to the instant case--the City sought to recover amounts that it had (apparently voluntarily) paid in medical expenses on behalf of the injured employees. *See Tate,* 101 So. 2d at 264.

4

surety for Haynes and has no right of subrogation.

*Trammell*, 101 So. 2d at 262 (emphasis added).

In *Crow*, the Alabama Supreme Court extended the rationale of *Walker, Trammell, Tate* and *Jones*--which had involved attempts at intervention by the City— to direct actions by the City against the third-party tortfeasor. As in the four previous cases, the court concluded that the City lacked standing to pursue an action to recover amounts that it had paid on behalf of an injured employee. *Crow*, 101 So. 2d at 264.

This court is persuaded by defendants' argument that the *Birmingham* cases operate to foreclose the plaintiffs from maintaining the far-reaching class action framed by their complaint. As in the 1958 cases, the plaintiffs here seek reimbursement by the defendants of amounts paid by the City and the Racing Commission on behalf of municipal employees. Based on the factual allegations of plaintiffs' complaint, the City and the Racing Commission have, at various times, voluntarily assumed the responsibility for paying the medical costs of their employees. Nothing presented to the court indicates that plaintiffs' decision to provide such benefits was premised upon any act or omission by defendants; indeed, once made, plaintiffs' agreement to pay medical benefits on behalf of their employees presumably extended to all aspects of medical care, not simply to smoking-related illnesses. Moreover, plaintiffs' complaint fails to allege that the City and the Racing Commission secured any contractual right of subrogation in connection with the agreement to provide employee medical benefits.

Were the law of Alabama as established by the *Birmingham* cases in 1958 unmodified by subsequent legislation, plaintiffs' complaint would be due to be dismissed in its entirety for lack of standing. However, this court concludes that a 1969 Act of the Alabama Legislature has

5

modified the rule established in the *Birmingham* cases.

## II. The August 21, 1969 Act

At oral argument on defendants' motion to dismiss, plaintiffs provided the court with a state statute that plaintiffs allege authorizes this action by the City against third-party tortfeasors. That statute, 1969 Alabama Act 518, provides in section 2 that:

> Any city referred to in section 1 of this Act[4/] shall be entitled to be reimbursed for all hospital bills, doctor's bills, medical expenses, employee salary while absent from duty, and other expenditures made by such city or agency as a result of an injury to an employee of such city or agency *while such employee is in the actual performance of his duties for such city or agency,* and which injury was proximately caused by the negligence of a third person; said reimbursement to be made by the person, firm or corporation guilty of or liable for such negligence or to whom such negligence may be imputed.

(Emphasis added).

Section 3 of the Act provides for a direct action against the negligent party:

> Any such municipality may for itself, or in its name for the benefit of an agency thereof, institute an action at law against any person, firm or corporation for reimbursement of expenditures made by such municipality or such agency for hospital bills, doctor's bills, medical expenses; and/or employee salary while absent from duty, made reasonably necessary by an injury to such employee of such city or agency proximately caused by the negligence of such person, firm or corporation, or which negligence may be imputed to such person, firm or corporation.

Although the court has been unable to locate any instance in which, within the last 29 years, this statute has been used as a basis for a suit to recover medical benefits from a tortfeasor, it seems clear that 1969 Ala. Act 518 does provide a limited authority to the City to pursue an action to recover benefits paid on behalf of City employees.

---

4. The preamble to the Act provides that the Act applies to Alabama cities with 300,000 or more residents.

The decisive issue that remains, however, is the extent to which the Act provides authority for plaintiffs' present action. The Act authorizes cities to recover benefits paid in connection with an injury sustained by an employee "*while such employee is in the actual performance of his duties for the city or agency.*" 1969 Ala. Act 518, section 2. Thus, in order to rule upon defendants' motion to dismiss, this court must determine whether the authority granted in the Act may reasonably be interpreted to cover tobacco-related injuries to the City's workers.

In order to evaluate the scope of the Act in this instance, it is appropriate to first establish what activity the Act *does not* cover. The Act does not authorize litigation by a city in connection with *any* injury to a city employee; rather, the injury must be sustained while the employee is "in the actual performance of his duties." The *Birmingham* cases provide a useful example. Had the Act been in place in 1958, Birmingham would have been authorized to recover salary and medical expenses on behalf of its policemen, because the policemen sustained the injuries *while on duty*. However, the text of the Act makes clear that a similar injury to an *off-duty* police officer could not form the basis for a recovery by the city. In the instant case, even the most liberal reading of the Act requires the court to conclude that the City lacks legislative authority to recover benefits paid on behalf of City employees who *never used tobacco products while on duty*, regardless of the severity of injury to such employees or their addiction to tobacco products.

At oral argument, when first presented with the text of the Act, this court noted that a literal reading of section 2 of the Act might authorize the City to pursue this action on behalf of City employees who used tobacco products "while . . . in the actual performance of [their] duties." Although the court finds it most doubtful that the Alabama Legislature, in adopting 1969 Ala. Act 518, intended to authorize a cause of action by cities based upon employees' use of tobacco

7

products while on duty, the court may not dismiss the City's claim pursuant to Federal Rule of Civil Procedure 12(b)(6) simply on the basis of the court's skepticism; the City may be able to establish that 1969 Ala. Act 518 authorizes a suit by the City to recover benefits paid on behalf of that limited group of City employees. However, plaintiffs' Second Amended Complaint is far too vague to serve as the foundation for such a subrogation action by the City. The court will grant the City a period of sixty (60) days in which to file an amended complaint that sets forth a sufficient basis for plaintiffs' claim under 1969 Ala. Act 518.

## Conclusion

This court has determined that plaintiffs' complaint is due to be dismissed in its entirety. All claims by the Racing Commission and all class claims brought on behalf of "[m]unicipalities, municipal corporations, counties and other local governmental entities" other than the City of Birmingham[5/] are due to be DISMISSED WITH PREJUDICE. Plaintiffs' claims for all types of relief not authorized by 1969 Ala. Act 518-- including punitive damages, attorneys' fees, pre- and post-judgement interest, expert witness fees, declaratory and injunctive relief, and costs— are also due to be DISMISSED WITH PREJUDICE. Further, all claims made by the City arising from injuries to indigent persons or other non-employees, and all claims based upon injuries to employees who did not use tobacco products "while . . . in the actual performance of [their] duties," are due to be DISMISSED WITH PREJUDICE. Finally, remaining claims based upon

---

5. 1969 Ala. Act 518 authorizes suit only by Alabama cities of 300,000 or more residents. The court's research indicates that, although the City of Birmingham boasted more than 300,000 residents in 1950 and in 1970, by 1980 the City's population had dropped to approximately 284,000 residents, taking it out of the purview of 1969 Ala. Act 518. No other Alabama city has ever reached a population of 300,000. *See* U.S. Dept. of Commerce, Statistical Abstract of the United States 1997 45-46 (117th ed. 1997). In any amended complaint, the City will be required to specify the time period(s) during which the City alleges that 1969 Ala. Act 518 provided it with authority to pursue reimbursement claims.

injuries sustained by city employees while on duty are due to be DISMISSED WITHOUT PREJUDICE. The City will be allowed a period of sixty (60) days in which to file an amended complaint that provides an adequate basis for the City's subrogation action under 1969 Ala. Act 518, including the categories of detailed information specified in the order that accompanies this opinion. Such a complaint should also include allegations addressing why any such claims are not barred by the statute of limitations.

Dated: March 9, 1998

Chief Judge Sam C. Pointer, Jr.

Service List:
- Mr. J.L. Chestnut, Jr.
- Mr. Henry Sanders
- Mr. Joseph W. Phebus
- Mr. Donald V. Watkins
- Mr. William S. Lerach
- Mr. Patrick J. Coughlin
- Mr. Frank J. Janacek, Jr.
- Mr. David Danis
- Mr. D. Michael Campbell
- Mr. John Carey
- Mr. Joseph Danis
- Mr. John M. Sims
- Mr. William J. Bailey
- Mr. Joel E. Dillard
- Mr. Vernon L. Wells, II
- Ms. Helen Currie Foster
- Mr. Randall D. Quarles
- Mr. Scott E. Delacroix
- Mr. Charles F. Gay, Jr.
- Mr. Martin A. Stern
- Mr. William C. Knight
- Mr. John C. Morrow
- Mr. D. Christopher Carson
- Mr. Robert Northrip
- Mr. Bruce Tepikian
- Mr. H. Thomas Wells, Jr.
- Mr. Kevin W. Patton
- Mr. Gregory H. Hawley
- Mr. Robert B. Reneau
- Mr. Sterling G. Culpepper, Jr.
- Mr. Robin G. Laurie
- Mr. Edward S. Allen
- Mr. Thomas W. Thagard, III
- Mr. Bruce F. Rogers
- Mr. Robert A. Huffaker
- Ms. Rachel Sanders-Cochran
- Mr. Joseph C. Espy, III
- Mr. Samuel H. Franklin
- Mr. William H. Brooks
- Mr. Jackson R. Sharman, III
- Mr. Aaron H. Marks
- Mr. Michael C. Lasky
- Mr. Fred Weiler
- Mr. James C. Munson